## THE UNITED STATES COURT OF APPEALS
## IN AND FOR THE TENTH CIRCUIT

TAMIKA WHITE,

        Appellant/Respondent,

v.

                                           Case No. 23-5069

KIMBERLY GRAHAM,

        Appellee/Petitioner.

## APPELLEE'S RESPONSE IN OPPOSITION TO
## *OPENING BRIEF OF RESPONDENT/APPELLANT*

***In Response to the State's Appeal of the Honorable Claire Eagan's Order From the Northern District of Oklahoma Granting the Appellee's Writ of Habeas Corpus in Case No. 23-cv-00164-CVE-SH***

<u>Oral Argument is Not Requested</u>

Respectfully submitted to the Court and delivered to:

Jennifer L. Crabb
Assistant Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
Service email: fhc.docket@oag.state.ok.us

As of September 22, 2023, by

 /s/ Richard O'Carroll
T. Richard O'Carroll, OBA # 11947
***O'Carroll & O'Carroll***
2171 N. Vancouver
Tulsa, OK 74127
918-581-2464
troc@cox.net

**ATTORNEY FOR KIMBERLY GRAHAM**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**There Are No Prior Related Appeals** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

THE STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

THE RESPONDENT OMITTED CRUCIAL INFORMATION FROM HER "PROCEDURAL
FACTS." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Response to Respondent's Proposition I: The Trial Court Did Not Err in
Granting Ms. Graham's Habeas Petition Because Ms. Graham Was Fully
and Finally Released on April 8, 2021, When the District Court Granted Her
PCR, Thus It Was Her Re-conviction Which She Contested in Federal Court** 13

**Response to Respondent's Claim That Ms. Graham Is Not Challenging Her
Judgment and Sentences, Rather State Post-Conviction Relief (PCR)
Rulings.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Response to Respondent's Claim Off *Su Sponte* Disregarding 28 U.S.C. §
2254(d).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**The Petitioner's Response to the Respondent's Claim the *De Novo* Review
Is Incorrect and *Teague*-barred** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

28 U.S.C. § 2254(d) ("AEDPA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bosse v. State,* 2012 OK CR 3, *now vacated,* 2021 OK CR 23 . . . . . . . . . 2, 3, 13

*Bouie v. City of Columbia*, 378 U. S. 347 (1964). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Brumfield v. Cain*, 576 U.S. 305 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U. S. 52 (2009)19

*Gardner v. Galetka*, 568 F.3d 862 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . 18

*Grant v. Royal*, 886 F.3d 874 (10th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hicks  v. Oklahoma,* 447 U.S. 343 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 19

*Johnson v. Williams*, 568 U.S. 289 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

*Matloff v. Wallace,*497 P.3d 686 (Okla. Crim. App. 2021). . . . . . . . . . . . . . . . 4, 6, 8

*McCracken v. Gibson,* 268 F.3d 970 (10th Cir. 2001). . . . . . . . . . . . . . . . . . . . . 18

*McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18

*Meek v. Martin*, ___ F.4th__, No. , 2023 WL 4714719(10th Cir. 2023). . . . . . . . 18

*Miller-El v. Cockrell*, 537 U. S. 322 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sellers v. Ward*, 135 F.3d 1333 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 14, 17

*See Skinner v. Switzer*, 562 U. S. 521(2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Steele v. Young*, 11 F.3d 14 1518(10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 14

*Stouffer v. Trammell*, 738 F.3d 1205(10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . 18

*United States v. Sineneng-Smith,* 590 U.S. ___ 140 S. Ct. 1575 (2020) . . . . . . 17

*Teague v. Lane,* 489 U.S. 288 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wolff v. McDonnell*, 418 U. S. 539 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Word v. Lord*, 648 F.3d 129 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Yates v. Aiken*, 484 U.S. 211 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**THE UNITED  STATES COURT OF APPEALS
IN AND FOR THE TENTH CIRCUIT**

TAMIKA WHITE,
          Appellant/Respondent,

v.                                                                    Case No. 23-5069

KIMBERLY GRAHAM,
          Appellee/Petitioner.

**APPELLEE'S RESPONSE IN OPPOSITION TO
*OPENING BRIEF OF RESPONDENT/APPELLANT***

### INTRODUCTION

The Tulsa County District Court (TCDC) of the State of Oklahoma vacated Ms. Graham's conviction and released her pursuant to applicable state and federal law in full force and effect at the time it granted her post-conviction relief, April 8, 2021.

The State eschewed an oral notice of intent to appeal.  The State ignored the deadline for filing the "jurisdictional" petition in error and designation of record. The State took no action whatsoever to either tether Ms. Graham or to contest the ruling of the TCDC for months.

Therefore, TCDC's Order, as all such un-appealed orders, became final. Yet months later, premised upon a new case forbidding the retroactive application of new procedural decisions, the TCDC "re-convicted" Ms. Graham who sought review of TCDC's decision before the Oklahoma Court of Criminal Appeals

(OCCA) which denied relief.   The TCDC then issued new judgements and sentences re-convicting Ms. Graham.  Contrary to the Respondent's claim, the Trial Court did not have a "disagreement" with the("OCCA"). Rather, OCCA's Judges  had a "disagreement" among themselves  as to the  illegality under state law of re-incarcerating Ms. Graham based upon charges lawfully dismissed and the finality of the order releasing her that was unchallenged by the state.

The  complete underlying facts were  accurately articulated in the OCCA dissenting opinions.   The Respondent omits crucial facts in the Respondent's brief to this Court; in its order which is the basis of the Trial Court granting the writ, the OCCA majority  ignored,  misstated and/or altered the crucial facts.   The facts speak for themselves.  Their finding of  an "unauthorized" dismissal was a complete fiction and on this reasonable minds cannot differ.

### There Are No Prior Related Appeals

### FACTS

The Tulsa County District Court (TCDC) granted Ms. Graham's application for post-conviction relief on April 8, 2021, pursuant to *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) and *Bosse v. State,* 2012 OK CR 3, *now vacated*, 2021 OK CR 23, because it was a stipulated fact that Ms. Graham was a Native and the events related to her convictions occurred on Indian Land, specifically the  Muscogee (Creek) Nation.   Ms. Graham was  released the same day after a Oklahoma Department of Corrections lawyer did his due diligence on the matter.  Ex. 7, pg.

69.

Prior to its ruling, the TCDC had informed the parties and the family of the decedents a week earlier of its intention to rule in Ms. Graham's favor.  The State was in attendance when the order was granted and at the setting the previous week.  The mandate on *Bosse* was issued the day before Ms. Graham's release April 7, 2021, and suspended the day after Ms. Graham's release on April 9, 2021.  Ex. 7, pgs. 257-258, 84-88; Ex. 1. pg. 39. Nevertheless, even with notice that the mandate in *Bosse* was pulled, the State did not give oral notice of intent to appeal.  The State never gave written notice of intent to appeal. The State did not file a designation of record for an appeal and the State did not file a petition in error for an appeal.  As outlined in Ms. Graham's writ and the Trial Court's opinion, all of these steps are required for the State to perfect an appeal at OCCA.

Instead, the State waited one hundred and thirty-four (134) days after Ms. Graham's release to attempt any action.  On August 20, 2021, the State sought a writ of prohibition against the TCDC judge[1] with the OCCA praying that the OCCA order the TCDC to "reconvict" Ms. Graham.

On September 1, 2021, Ms. Graham specially appeared as a prospective real-party-in-interest and moved to strike the State's pleading.  Ex. 7, pgs. 165-175.  She noted that the TCDC order was final because the State did not make

---

[1]*See Oklahoma v. Priddy,* OCCA PR-2021-874.

any effort to appeal.   She cited numerous state procedural rules barring an

appeal and, putting the OCCA judges on notice, she further claimed a due

process violation pursuant to *Hicks  v. Oklahoma,* 447 U.S. 343 (1980).  On

September 3, 2021, the OCCA dismissed the State's writ noting it had not been

presented to the TCDC.[2]

Yet, before the OCCA dismissed the State's writ of prohibition, the State

simultaneously sought a *Motion to Vacate Order Granting Post Conviction Relief,*

*Reinstate Conviction and Sentences, and Remand to Custody* before the TCDC

on August 25, 2021, alleging, as it had in its writ, that the OCCA's holding in *State*

*ex rel.  Matloff v. Wallace,*[3] (which itself was defective according to the OCCA's

rules and was released months after TCDC's Order in Graham) is that *Bosse* did

not apply retroactively to final orders.

Again, Ms. Graham specially appeared before the TCDC  and moved to

strike the State's pleading.  Again, she noted that the TCDC order dismissing her

case was final because the State did not make any effort to appeal.   Again, Ms.

Graham cited numerous state procedural rules barring the State's appeal and,

again, she further claimed a due process violation pursuant to *Hicks  v.*

*Oklahoma,* 447 U.S. 343 (1980).  Ex. 7, pgs. 165-175.  In fact, all of Ms.

---

[2]In its *Order* the OCCA mistakenly cites the day of Ms. Graham's release as April 21, 2021, and the actual date was April 8, 2021.  *See* Ex. 7, pg 143.

[3]497 P.3d 686 (Okla. Crim. App. 2021)

Graham's relevant pleadings , twice to OCCA and once to TCDC, contained the

following language:

> It has been axiomatic for generations of lawyers going back to before
> statehood that an un-appealed district court order, whether civil or
> criminal,  is final.  Similarly, this Court has been ruthlessly efficient
> for scores of decades in applying procedural default to cause waiver
> of an issue when it is against the Citizen.  In *Hicks v. Oklahoma*, 447
> U.S. 343, 100 S. Ct. 2227, 65 L. Ed.2d 175 (1980) state law provided
> a specific method for determining whether a specific sentence should
> be imposed.  This created "substantial and legitimate expectation
> that [the Petitioner would] be deprived of his liberty", if this method
> was not used and that a "liberty interest is one that the Fourteenth
> Amendment preserves against arbitrary deprivation by the State." *Id.*
> at 346.

> Likewise, the Petitioner has a liberty interest protected by a clear,
> specific and **exclusive** method under Oklahoma law for the State to
> seek relief from the district court's order freeing her.  It chose not to
> do so and it will be a substantive due process violation for this Court
> to allow the State an unlawful remedy now. (Emphasis original).

> The Respondent ignores numerous statutory and procedural bars to
> rectify a problem of the State's own making.  The Petitioner has a
> substantial and legitimate expectation this Court will follow its own
> rules and laws.  Upending an un-appealed  final order, an order
> deemed to be the same as verdict of not guilty, months after the
> Petitioner's unfettered release will make a mockery of this Court
> playing by its own rules.

Ex. 7, pg. 30.

Contrary to OCCA's eventual findings that the order releasing Ms. Graham

was "unauthorized," even the State agreed that the TCDC's grant of Ms.

Graham's post-conviction was lawful. *See  Opinion and Order,* Ex. 1, pg.

39(wherein the Trial Court noted the State explained to the TCDC in a pleading

that "decisions will become official, and may be used as authority, when the

mandate in the matter has issued **and/o**r upon placement of the Court's official

seal at the beginning of the decision when filed with the Clerk of this Court.")

(Emphasis in Opinion and citations omitted).  Likewise, District Attorney

Kunzweiler explained to the TCDC in oral argument on November 5, 2021, that:

> This [trial] court properly entered its ruling based upon the *Bosse* decision, which is Oklahoma Court of Criminal Appeals 2021, I think, 3 was the numbered cause. And this Court determined, based upon agreed upon facts, that Ms. Graham was a member of an Indian nation and that the crime that she committed at that time appeared to be on a reservation that had not been disestablished.  Based on what *McGirt* had said and what the Court of Criminal Appeals had said, at that time, when this matter was brought before you on a post-conviction relief application, or at least what is styled as a supplement of post-conviction relief application, this court, it appeared, entered a proper ruling.

Ex. 7, pg. 257-258.

Nevertheless,  the TCDC still granted the State's unprecedented motion

with the journal entry "un-dismissing" its final order being filed on November 17,

2021, pursuant to a case, *Wallace,*  which did not exist until months after her

release. The TCDC ignored the fact that the only notice to Ms. Graham was an

email to her former lawyer in ruling on the merits; however, it did take the same

into consideration and allowed  Ms. Graham, who was already arrested for the

same events by Marshals from the Creek Nation and placed on a Fifty-Two

Thousand Dollar ($52,000.00) cash bond, to remain at liberty pending an appeal.

*Nation v. Graham*, CF-21-391. Ex. 7, pg. 81.

Ms. Graham immediately sought a writ of prohibition in the OCCA on November 19, 2021. Again, she noted that the TCDC order was final because the State did not make any effort to appeal. Again, Ms. Graham cited numerous state procedural rules barring the State's appeal and, again, she further claimed a due process violation in a *Hicks* claim as noted above.

While the matter was pending, the OCCA asked the State to brief two (2) issues neither of which was premised on a constitutional claim and both of which would have given OCCA power to negate the final un-appealed orders. Ex. 7, pg. 94.

Some seventeen (17) months later, the OCCA denied Ms. Graham's prayer for affirmative relief on April 18, 2023, in a 3-2 split decision. There were five (5) opinions, two (2) concurring and two (2) dissenting, and only one judge in his dissent mentioned a United States constitutional argument, and then it was general concern, made in passing, not specific to Ms. Graham, and without citations, to wit: "I fear that issues of due process, equal protection and *ex post facto* prohibitions will haunt the Court if it persists in crossing the Rubicon with this type of jurisprudence." (J. Lumpkin, dissent) Ex. 7, pg. 62.

Both Judge Rowland and Judge Lumpkin wrote powerful dissents indicating this unpublished *Order* was unprecedented. *See* Ex. 7, pg. 34.

Judge Rowland stated:

Post-conviction relief in Oklahoma is governed entirely by statute, and where the Post-Conviction Procedure Act does not grant a court

jurisdiction, no jurisdiction exists. . .In this case, Judge Priddy granted postconviction relief on April 8, 2021, vacating Petitioner's convictions, and pursuant to statute, the State had thirty days in which to appeal. The State did not do so and Judge Priddy's order became final. On August 12, 2021, this Court handed down *State ex rel. Matloff v. Wallace*, 2021 OK CR 21, 497 P.3d *686, cert.denied,* 142 S.Ct. 757 (2022), holding that the *McGirt* decision is not retroactive to convictions which had already become final.

Judge Rowland further stated: **"The State's motion to vacate the grant of post-conviction relief, filed August 25, 2021 and granted by Judge Priddy on November 18th, simply does not exist under Oklahoma law.** The post-conviction statute does not provide for a motion to vacate, motion to reconsider, or anything other than a timely-filed appeal to this Court. 22 O.S.2011, § 1087." (Emphasis added).

Judge Rowland ended his analysis by writing:

The majority today glosses over that statutory limitation and holds that the non-retroactivity of *Matloff* is itself retroactive to this case. To conclude that Judge Priddy's original grant of postconviction relief was"unauthorized by law, " the majority implicitly assumes that *Matloff* was the law even before we handed down that case. As authority, the Court relies upon *Application of Anderson*, 1990 OK CR 82, 803 P.2d 1160, a case which is, to say the least, a curious piece of jurisprudence. It is, to say the most, an invention by this Court three decades ago to stop a convicted axe murderer from being wrongly released. It is noteworthy that despite the State's failure to properly appeal that order, **both sides agreed the trial court's order releasing the prisoner was wrong**. *Anderson* was wrong then and it is wrong now. Even conceding its precedential value, it should be applied only where both sides agree the trial court's ruling was erroneous. Unlike *Anderson*, Petitioner does not concede the original grant of post-conviction relief was unlawful; in fact, she vehemently disputes it. (Emphasis added)

Likewise, Judge Lumpkin writes more than eleven (11) pages in his

dissent.  *See* Ex. 7, pg. 52, et. seq.  The following are salient <u>quotes</u>:

- The record shows that on April 8, 2021, Tulsa County District Judge Tracy Priddy entered a valid order granting Petitioner post-conviction relief based upon the extant law at that time, *McGirt* and this Court's then interpretation of *McGirt* contained in *Bosse*. The State did not appeal that order. Now the State and this Court are bound by that judgment regardless of the legal basis upon which it was entered.

- Without finality in the law there is no law. This Court did what was legally required at the time *Bosse* was originally handed down. **The District Court acted as it was legally required to do when it granted the post-conviction judgment which became final. The law was followed both times but now this Court is disregarding basic principles of law to reach a desired result.** (Emphasis added).

- The State did not seek an appeal out of time;

- Judge Priddy lacked authority to vacate her valid post-conviction order; she had no case pending before her and her order granting post-conviction relief had been final for several months;

- Judge Lumpkin dismantled the supposed precedent used by the majority ending with: "The only commonality between *Anderson* and this case is that they are both anomalies in the law and are examples of the exercise of raw judicial power without authority and without the matter being properly before the Court at the time the subject order is entered;

- We are required to adjudicate what is before us, not remake the case into something it is not to achieve a desired result;

- *Matloff* announced a new rule of criminal procedure; therefore, its holding should not be applied retroactively, just as it held the *McGirt* decision would not be applied retroactively. Yet retroactive application of *Matloff* is exactly what the majority

does in this order in its quest to preserve the conviction;

- **There has never been a legal principle that allows for vacation of a final judgment when a court has no jurisdiction or authority to do so. This is a finite principle of law regardless of whether the court granting the final judgment did so using the correct or incorrect basis for the decision.** (Emphasis added)

- Everyday this Court denies requests by appellants to apply *McGirt* retroactively because of our holding in *Matloff*. This is proper due to our consistent application of the rule of law and established legal precedent. However, it is inconsistent to allow the State to re-imprison Petitioner after the lawful vacation of her conviction. Such a result obtains only through a process of result-driven legal gymnastics . . . .

- I am deeply disappointed the majority has abandoned the rule of law in this case. . . It is the rule of law that protects citizens from any single individual's or group's sense of justice at any particular time;

- The original published opinion in *Bosse* was handed down on March 11, 2021. The mandate issued on April 7, 2021, but was stayed on April 9, 2021, as shown on the docket. Fn1. pg 2 of dissent.

Rather, the majority retroactively applied *Wallace* and deemed Ms.

Graham's release as "unauthorized by law" notwithstanding the evidence to the

contrary presented by both the prosecutor and Ms. Graham establishing that

*Bosse* was valid law at the time of Ms. Graham's release.  The concurring judges

in OCCA's denial of Ms. Graham's writ further explained their "truncated" holding:

Judge Musseman called the Respondent's order a "timely correct[ion] to an order

unauthorized by law." Ex. 7, pg. 49. Judge Hudson similarly declared that

OCCA's "decision is firmly grounded in law and fact." He characterizes the Petitioner's release as "erroneous" which was "promptly correct[ed]." He denied that it was a "feel-good judicial decision making which equitably corrects the State's failure to appeal the District Court's decision." Ex. 7, pg. 49. He called the order "unauthorized judicial relief" granted by the OCCA's "misdirection" in *Bosse*. Finally, Judge Hudson falsely declared that the TCDC "granted the defendant [Ms. Graham] postconviction relief before our mandate in *Bosse* issued." Ex. 7, pg. 50.

Thus, Ms. Graham was "re-convicted" to a total term of one hundred and eight (108) for a traffic accident and she sought relief from the Trial Court.

In the face of these and other facts, the Trial Court granted Ms. Graham's *Hicks* motion finding, in part, "OCCA arbitrarily disregarded the crushing weight of the state law and its own procedural rules governing postconviction review and capriciously rested its conclusion that the TCDC had authority to vacate the April 8, 2021, order granting postconviction relief on the demonstrably false premise that the April 8, 2021, order was 'unauthorized by law.'" Ex. 1, pg. 38.

ARGUMENT AND AUTHORITIES

THE STANDARD OF REVIEW.

Federal habeas relief will lie if the state court's decision was (1) either contrary to, or involved an unreasonable application of, clearly established federal law or (2) based upon an unreasonable determination of the facts in light of the

evidence presented in state court. 28 U.S.C. § 2254(d) ("AEDPA").  While there is

a strong presumption in favor of the state court's rulings deciding the merits of a

federal claim before it, this presumption can be overcome where, as here, there

is clear evidence that the state court did not adjudicate the claim.  *Johnson v.*

*Williams*, 568 U.S. 289 (2013).  Further, an unreasonable determination of fact

occurs, as here, when no fairminded jurist could conclude otherwise. *Brumfield v.*

*Cain*, 576 U.S. 305, 314 (2015). Likewise, while mere disagreement to the state

court's factual findings is inadequate to establish a federal claim,  deference to

the state court's factual findings "[e]ven in the context of federal habeas,

deference does not imply abandonment or abdication of judicial review," and

"does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U. S. 322, 340

(2003).

### THE RESPONDENT OMITTED CRUCIAL INFORMATION FROM HER "PROCEDURAL FACTS."

The Respondent did not address the State's complete failure to even

attempt an appeal of the TCDC granting of Ms. Graham's postconviction relief on

April 8, 2021, because the State believed *Bosse* was valid; ordering her

unfettered release even when the mandate on *Bosse* was pulled the next day.

Nor did the Respondent note that Ms. Graham was released from ODOC the

same day.  Ex. 7, pg. 9.  The Respondent further omitted OCCA's "demonstrably

false" claim that the TCDC's order was unauthorized, when in truth and in fact

both the State and Ms. Graham had explained to the OCCA that *Bosse* was valid

precedent on April 8, 2021, both because it was published with a seal and because the mandate came down the day before the 8th and was pulled the next day. Ex. 7, pgs. 257-258, 84-88; Ex. 1. pg. 39.     Finally, Judge Hudson falsely declared that the TCDC "granted the defendant [Ms. Graham] postconviction relief before our mandate in *Bosse* issued."  Ex. 7, pg. 50.

These facts are important because, when coupled with the unrelenting state law rules and cases which establish an un-appealed district court order is final,  Ms. Graham proved OCCA's actions were arbitrary and capricious, and, more likely, simply an outright fiction.

**Response to Respondent's Proposition I: The Trial Court Did Not Err in Granting Ms. Graham's Habeas Petition Because Ms. Graham Was Fully and Finally Released on April 8, 2021, When the District Court Granted Her PCR, Thus It Was Her Re-conviction Which She Contested in Federal Court.**

The Trial Court's decision is thoughtful and tight.  The Respondent's attack of it is  superficial and picayune. Facts push the law and OCCA's manipulation of the facts with its false claim TCDC's order releasing Ms. Graham was "unauthorized," was open, notorious, and egregious.  Furthermore, as noted above, Judge Lumpkin on the OCCA declared this ruling was a denial of due process, equal protection and *ex post facto* prohibitions while Ms. Graham's *Hicks* claim was raised in every forum.  *See* pgs. 5-6, *supra.* Moreover, Judge Hudson's declaration that Ms. Graham was released before the  *Bosse* mandate is unquestionably false. One must believe Judge Hudson read Judge Lumpkin's

dissent wherein Judge Lumpkin specifically listed the dates on the *Bosse* mandate-issued April 7, 2021, and pulled April 9, 2021-in his dissent.  Ex. 7, pg. 52, note 1. Thus, Judge Hudson would have known his statement was false when he stated it.

The State cites *Word v. Lord*, 648 F.3d 129, 131-32 (2d Cir. 2011) (*per curiam*); *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *Steele v. Young*, 11 F.3d 14 1518, 1523-24 (10th Cir. 1993); and *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986) for the proposition that postconviction error is not cognizable in a habeas petition.  Yet, as noted by the Trial Court, these cases are all factually distinguishable because there the petitioners were denied collateral relief and were seeking a federal remedy from that denial, whereas here Ms. Graham is attacking her re-conviction premised upon a demonstrably false rational after being granted postconviction relief. Furthermore, it was the State, not Ms. Graham, who defaulted its appeal of her release.

## A.  The Respondent Erroneously Claims that Ms. Graham Sought Relief for Alleged State Errors.

The Respondent ignores the fact that all *Hicks* claims, by definition, involve the state courts application of state law and no court is entitled to create a fiction to justify its rulings, especially when both parties agree the law in question was in full force and effect and tangible documents prove the same.  Nor are judges allowed to falsely claim the dismissal of Ms. Graham's convictions occurred before the mandate in *Bosse* issued, especially when his colleague listed the

dates in his dissent.  A state court unreasonably determines the facts when it

"plainly misapprehend[s] or misstate[s] the record in making [its] findings, and the

misapprehension goes to a material factual issue that is central to petitioner's

claim . . . ." *Byrd v. Workman*, 645 F.3d 1159, 1171-72 (10th Cir. 2011) (internal

quotation marks and citation omitted). The Trial Court spoke directly to this issue

in its Opinion citing the cases reiterated by the Respondent in this recent claim.

The Trial Court agreed with the Respondent and addressed her cases, to a point,

but then addressed the core of Ms. Graham's argument that the state courts'

> failure to follow state law and state procedural rules, under the
> unique facts of her case, deprived her of a liberty interest protected
> by the Fourteenth Amendment. And whether a state's application of
> its own laws comport with the Fourteenth Amendment's Due Process
> Clause is a matter of federal law, not state law. *See e.g., Hicks*, 447
> U.S. at 345-46.

Ex. 1, pg. 26.  The Trial Court went on to cite numerous cases confirming that the

Fourteenth Amendment Due Process Clause does afford a petitioner relief from

the state court's unlawful manipulation of state law.   Ex. 1, pg. 27.

Ms. Graham contends if the OCCA is allowed to falsely label an un-

appealed final order as "unauthorized" when all parties agreed it was authorized

and tangible documents prove it was authorized, and then ignore  myriad

procedural bars-bars that it has ruthlessly utilized against the citizen/petitioner-

then there is no such thing as a Fourteenth Amendment Due Process Claim.

Ever.

### B. Response to Respondent's Claim That Ms. Graham Is Not

**Challenging Her Judgment and Sentences, Rather State Post-Conviction Relief (PCR) Rulings.**

By all measurements, Ms. Graham's PCR was over when the TCDC vacated her convictions, dismissed her case and the State waived its appeal. Ms. Graham has never contested her PCR. In fact, Ms. Graham sought a writ of prohibition because the TCDC's ruling was not authorized by law while several other similarly situated(although not released) petitioners sought PCR. Ex. 7, pg. 90. Words  matter in court and TCDC's inability to define its re-conviction proceedings is telling.[4]  What Ms. Graham contested was the "Re-instated" Judgement and Sentences which were generated years after Ms. Graham sought relief in the District Court.   Ex. 14, pg. 1, etc.  These were the only judgments and sentences remaining because the original ones had been vacated by a valid order everyone agree was valid at the time.  Thus, Ms. Graham is focused on the judgements and sentences-the only thing holding her in custody-not the PCR proceedings which were over.

The Respondent correctly cites the Trial Court's findings in her motion.  Pg. 10.  However, the Respondent overlooks the Trial Court's previous analysis and distinguishing all of the Respondent's cases.  Ex. 1, pgs. 24-29.   Moreover, the

---

[4]"As I had stated in chambers that, because I don't know exactly what this proceeding is, I am going to be candid, based on our procedural rules, it doesn't really fit anywhere and, for that reason, I do not have any ability or authority under any statutory or constitutional provision that would allow me to require Ms. Graham be here at this place or issue any kind of a warrant for her arrest or set a bond." Ex. 1, pg. 16.

Trial Court addressed this matter extensively and found "[e]ven assuming the

Fourteenth Amendment violation Graham alleges here could be construed as

arising from a state postconviction proceeding, Graham's present confinement

under the reinstated judgment and sentence that was entered against her in April

2023 is the direct result of the alleged due process violation." Ex. 1, pgs. 24-29,

*see also* footnote 15., pg 29(finding the State's characterization as "generous.")

The Respondent claims "that when a habeas petitioner "focuses only on the

State's post-conviction remedy and not the judgment which provides the basis for

[her] incarceration, it states no cognizable federal habeas claim." *Sellers*, 135

F.3d at 1339. In *Sellers* the petitioner was relying on a PCR statute.  Ms. Graham

is relying on her 14th Amendment  Due Process Claim and no court has ever

upended a final un-appealed dismissal for a demonstrably false reason and

called it good.

### C.  Response to Respondent's Claim Off *Su Sponte* Disregarding 28 U.S.C. § 2254(d).

The Respondent misconstrues Ms. Graham's supposed omission seeking

relief from an unlawful order.  All Ms. Graham has done is seek relief from an

unlawful order. Moreover, while the "party presentation principle" is the norm, "a

court is not hidebound by the precise arguments of counsel."  The Supreme court

has recognized that "[t]here are no doubt circumstances in which a modest

initiating role for a court is appropriate." *United States v. Sineneng-Smith,* 590

U.S. ___ 140 S. Ct. 1575, 1579-1581(2020).

The  Trial Court noted the correct standard of review under the AEDPA is not waivable . . .It is an unavoidable legal question [the court] must ask, and answer , in every case. *See Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009).  Likewise, when an applicant presents a claim that the state courts have not adjudicated on the merits, the federal court may review that claim *de novo*. *Johnson v. Williams*, 568 U.S. 289, 293 (2013). Then, the "standard of review is more searching." *Stouffer v. Trammell*, 738 F.3d 1205, 1213 (10th Cir. 2013) (internal quotation marks and citation omitted). And "[I] may exercise [my] independent judgment in deciding the claim." *McCracken v. Gibson,* 268 F.3d 970, 975 (10th Cir. 2001).

Additionally, contrary to the Respondent's suggestion in her reference to *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), Ms. Graham is not a *pro se* litigant and her pleading, which was fact intensive, is a far cry from a motion to dismiss.  Similarly, the Respondent's reference to *Grant v. Royal*, 886 F.3d 874 (10th Cir. 2018), is inappropriate because here the state court never addressed Ms. Graham's claim.  Facts win cases and the facts here, coupled with the dissenting judges' opinions, make a powerful case that OCCA cared more about reversing the *McGirt* upheaval than, respectfully, following its own law.

The Trial Court found "that nothing in the five (5) page majority opinion even hint[ed] that the majority acknowledged, much less evaluated the substance of Ms. Graham's Fourteenth Amendment Claim."  Ex. 1, pgs. 33-34.

This was not a case like *Meek v. Martin*, ___ F.4th__, No. , 2023 WL 4714719, *36 (10th Cir. July 25, 2023) where the federal court deferred to OCCA's determination  that not objecting to evidence or not introducing evidence was a trial strategy by legal counsel.

Everything about OCCA's order telegraphed that the Court was a remedy looking for a reason.  The self-congratulations by the concurring judges, the false statements known to be false or reasonable should have been known to be false.  The special brief from the State to solve its problem. The turning of a blind eye to factual documents and writings in briefs.  The Court in  *Liteky v. United States,* 510 U.S. 540 (1994) held that judges are able to form  strong opinions about the parties based upon facts introduced in the proceedings.  The Respondent is misguided.  The OCCA did not overlook Ms. Graham's claim.  It ignored it.

**D. The Petitioner's Response to the Respondent's Claim the *De Novo* Review Is Incorrect and *Teague*-barred.**

As previously noted, a *Hicks* claim requires the Trial Court to review the state court's application of state law.  Once a state establishes a statute, and having done so, it is required to comply with due process when applying that law in Johnson's case. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U. S. 52, 69 (2009); *Hicks v. Oklahoma*, 447 U. S. 343, 346 (1980); *Wolff v. McDonnell*, 418 U. S. 539, 556-557(1974). Ths, a litigant can credibly claim that a State's erroneous interpretation of, or refusal to comply with, its own law can amount to a federal due process violation. *See Skinner v. Switzer*, 562 U.

S. 521, 530 (2011); *Bouie v. City of Columbia*, 378 U. S. 347, 356 (1964). As all are aware,  the *Hicks* precedent was established when a state court ignored the petitioner's right to jury sentencing because such an arbitrary disregard of a defendant's liberty interest was a denial of due process of law even though the OCCA had the right to modify sentencing. *Hicks* has been the law for more than fifty years and due process can be violated in myriad ways.  As noted by the Trial Court,  "*Teague* also made clear that a case does not "announce a new rule, [when] it '[is] merely an application of the principle that governed'" a prior decision to a different set of facts. *Teague v. Lane,* 489 U.S. 288, 307 (1989) (*quoting 20*).


The Respondent keeps insisting that there is nothing to see here, but comparing the wrong done to Ms. Graham  versus the wrong done to *Hicks* is revealing.  In the latter the OCCA was merely apathetic to *Hicks'* rights.  In the former, the OCCA was, respectfully, actively hostile to Ms. Graham's rights as was so forcefully noted in the dissents by two (2) OCCA judges.

The State misses the mark both in its timing and its authority.  The majority of OCCA had to know what the dissenting judges stated and still, not only did the majority not address denial of due process, it indulged in a fiction.

### CONCLUSION

The Trial Court's judgement is founded in both fact and law and should be affirmed.

**ORAL ARGUMENT**

Ms. Graham respectfully does not request oral argument in this case.

Counsel believes the issues in this case have been sufficiently presented in the

briefs such that this Court would not be materially aided by the presentation of

oral argument.

Respectfully submitted to the Court and delivered to:

Jennifer L. Crabb
Assistant Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
Service email: fhc.docket@oag.state.ok.us

As of September 22, 2023, by

/s/ Richard O'Carroll
T. Richard O'Carroll, OBA # 11947
*O'Carroll & O'Carroll*
2171 N. Vancouver
Tulsa, OK 74127
918-581-2464
troc@cox.net

**ATTORNEY FOR KIMBERLY GRAHAM**