FILED
United States Court of Appeals
Tenth Circuit

May 17, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

KIMBERLY GRAHAM,

      Petitioner - Appellee,

v.

TAMIKA WHITE, Warden,

      Respondent - Appellant.

No. 23-5069

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:23-CV-00164-CVE-SH)**

_____

Jennifer L. Crabb, Assistant Attorney General, Office of the Attorney General for the State of Oklahoma (Gentner F. Drummond, Attorney General for the State of Oklahoma, with her on the briefs), Oklahoma City, Oklahoma, for Respondent-Appellant.

T. Richard O'Carroll, O'Carroll & O'Carroll, Tulsa, Oklahoma, for Petitioner-Appellee.

_____

Before **TYMKOVICH**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal addresses due process when a state district court modifies an order after the controlling precedent changes. Here a state

district court relied on existing precedent to vacate a defendant's convictions. But the state appellate court then overruled that precedent. With this change in precedent, could the state district court modify its prior ruling and reinstate the convictions without violating the defendant's right to due process? The state appeals court answered *yes*, but the federal district court answered *no* and granted habeas relief to the defendant.

We reverse the grant of habeas relief. Regardless of whether the state appeals court had erred, its rejection of the due process claim was at least reasonable based on the facts and Supreme Court precedent.

## Background

### 1.    The state district court vacates the defendant's convictions based on existing precedent.

This appeal grew out of Ms. Kimberly Graham's state convictions for committing first-degree manslaughter and leaving the scene of a fatal accident. *See* Okla. Stat. tit. 21, § 711; Okla. Stat. tit. 47, § 10-102.1. After the convictions became final, Ms. Graham applied for post-conviction relief on grounds that she was a Native American and the events took place on a reservation. While this application was pending, the Supreme Court held in *McGirt v. Oklahoma* that

- Congress had not disestablished the reservation and

- the State of Oklahoma lacked jurisdiction to prosecute crimes committed by Native Americans within this reservation.

140 S. Ct. 2452, 2459 (2020).[1]

But did *McGirt* apply to defendants (like Ms. Graham), whose convictions had already become final? The Oklahoma Court of Criminal Appeals initially answered *yes* in *Bosse v. State*, 484 P.3d 286 (Okla. Crim. App. 2021). The day after *Bosse* took effect,[2] the state district court granted post-conviction relief to Ms. Graham and vacated her convictions.

## 2. The state district court reinstates the convictions after the state appeals court changes its precedent.

The next day, the Oklahoma Court of Criminal Appeals recalled its mandate in *Bosse*. Appellant's App'x vol. 1, at 90–91. Despite recall of the *Bosse* mandate, the State declined to appeal the vacatur of Ms. Graham's convictions. After the appeal deadline expired, the Oklahoma Court of Criminal Appeals overruled *Bosse* and decided that *McGirt* didn't apply

---

[1]     First-degree manslaughter is punishable in federal court under the Major Crimes Act, 18 U.S.C. § 1153(a). *See United States v. Budder*, 76 F.4th 1007, 1009 (10th Cir. 2023) ("Under the Major Crimes Act, 18 U.S.C. § 1153, . . . manslaughter allegedly committed by an Indian in Indian country (which includes Indian reservations . . .) in Oklahoma must be tried in federal court rather than state or tribal court."). The charge of leaving the scene of a fatal accident is punishable in federal court under the Assimilative Crimes Act, 18 U.S.C. § 13, and the Indian Country Crimes Act, 18 U.S.C. § 1152. *See United States v. Langford*, 641 F.3d 1195, 1196–97 (10th Cir. 2011) (explaining that state crimes committed in Indian country are assimilated into federal law).

[2]     The court's opinion could be used as authority upon issuance of the mandate or placement of the court's seal upon filing with the clerk. Okla. Crim. App. R. 3.13(B). The mandate in *Bosse* was issued on April 7, 2021. *See* Appellant's App'x vol. 1, at 88.

retroactively to convictions that had become final. *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 689 (Okla. Crim. App. 2021).[3]

| Appellate court issues mandate to apply *McGirt* retroactively | Trial court vacates Ms. Graham's convictions | | Appellate court overrules *Bosse* and decides that *McGirt* doesn't apply retroactively |
|---|---|---|---|
| 4/7/21 *Bosse v. State* | 4/8/21 | | 8/12/21 *Matloff v. Wallace* |

Given the new decision, could the state district court modify its initial order and reinstate Ms. Graham's convictions? The State thought so and asked the state district court to

- rescind the initial order (vacating the convictions) and

- reinstate the convictions.

Appellant's App'x vol. 1, at 150–60. The state district court granted these requests. *Id.* at 82–85.

With the convictions reinstated, Ms. Graham asked the Oklahoma Court of Criminal Appeals for a writ of prohibition, arguing that a liberty interest had arisen from the order vacating her convictions. *Id.* at 80; *see Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005) ("[A] liberty

---

[3]    After deciding *Matloff*, the Oklahoma Court of Appeals abrogated its prior opinion in *Bosse* and upheld the denial of post-conviction relief because *McGirt* no longer applied retroactively. *Bosse v. State*, 499 P.3d 771, 774–75 (Okla. Crim. App. 2021).

4

interest inherent in the Due Process Clause arises upon an inmate's release from confinement."). The resulting question was whether the State could deprive her of that liberty interest based on the state appellate court's change in precedent. Ms. Graham urged the state appeals court to answer *no*, arguing that reinstatement of her convictions would arbitrarily deprive her of a liberty interest.

The Oklahoma Court of Criminal Appeals disagreed with Ms. Graham and denied her request for a writ of prohibition. *Graham v. Priddy*, No. PR-2021-1332, slip op. at 4 (Okla. Crim. App. Apr. 18, 2023) (unpublished). In denying the request, the court reasoned that

- the new precedent had prevented application of *McGirt* to convictions that had already become final and

- the initial order (vacating the convictions) had been "unauthorized under Oklahoma law."

*Id*. at 3–4.

### 3.    The federal district court concludes that reinstatement of Ms. Graham's convictions was an arbitrary deprivation of her liberty interest.

Ms. Graham sought habeas relief, claiming that

- the initial order (vacating the convictions) had created a liberty interest and

- the reinstatement of her convictions had arbitrarily stripped her of that liberty interest.

The federal district court agreed with Ms. Graham and granted habeas relief. The State appeals, arguing that

5

- habeas relief isn't available because the alleged defects involve only state law and post-conviction procedures and

- the federal district court should have deferred to the state appeals court because it had acted reasonably.

We reject the State's arguments about the availability of a habeas claim. Ms. Graham is asserting federal claims, not state-law claims, and she's challenging the reinstatement of her convictions rather than defects in post-conviction procedures. But we agree with the State on the reasonableness of the state appellate court's decision. Because that decision rested on a reasonable application of the facts and Supreme Court holdings, the federal district court should have deferred to the state appeals court. With that deference, we reverse the grant of habeas relief.

### Availability of Habeas Relief

The State argues that Ms. Graham couldn't obtain habeas relief even if she were right on the merits because the claim involves only a violation of state law and misapplication of post-conviction procedures. We disagree with the State.

**1.    Ms. Graham alleged a violation of the Fourteenth Amendment, not just state law.**

Habeas relief is available for a violation of the federal constitution, but not for a violation of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The State points out that Ms. Graham alleges a misapplication of Oklahoma law. If Ms. Graham had stopped there, her claim wouldn't

6

support habeas relief. But Ms. Graham also alleges a denial of due process from the misapplication of state law. These allegations involve a violation of not only state law but also the federal constitution.

Granted, the theories involving state law and the federal constitution are intertwined. But "in rare circumstances, a determination of state law can be so arbitrary or capricious as to constitute an independent due process violation." *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007) (alterations and quotation marks omitted) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Ms. Graham not only labels her claim as constitutional, but also alleges that it was arbitrary for the state court to jettison the initial order (vacating the convictions). Though this allegation turns on an antecedent question of state law, an arbitrary application of state law could impinge on the right to due process. *See id.* So the claim isn't confined to a violation of state law.

**2.    The claim involves a challenge to convictions rather than post-conviction procedures.**

Habeas corpus generally involves challenges to the fact or duration of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *McIntosh v. U. S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997). These challenges typically involve defects in the underlying conviction.

7

From time to time, however, prisoners seek habeas relief based on perceived errors in a state's corrective processes. Many states, like Oklahoma, provide post-conviction remedies even though they're not constitutionally required. *See Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987) (concluding that states have no constitutional obligation to provide post-conviction relief). Given the availability of these remedies, a defendant might seek habeas relief based on a state court's errors in the post-conviction proceedings. But habeas relief is unavailable when the error involves only the post-conviction procedures rather than the imposition of the conviction or sentence. *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[B]ecause the constitutional error [the petitioner] raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim.").

The State characterizes Ms. Graham's claim as a challenge to post-conviction procedures. But Ms. Graham isn't complaining about those procedures. She is instead complaining about the reinstatement of her convictions through the state district court's grant of post-conviction relief to the State.

Typically, a conviction comes after a trial or guilty plea. Here the convictions were reinstated through post-conviction relief to the State. But

the impact on Ms. Graham was the same. With the convictions reinstated, Ms. Graham could seek habeas relief just like any other prisoner.[4]

### Error in Granting Habeas Relief

Though a writ of habeas corpus could be available for a constitutional violation, we must determine whether the federal district court was correct in issuing the writ. In issuing the writ, the court concluded that it could decide in the first instance whether reinstatement of the convictions had violated the Constitution. The State argues that the federal district court should have deferred to the state appeals court's conclusions. We agree with the State.

**1.    Federal law restricts the availability of habeas relief when the state appeals court rejects a constitutional claim on the merits.**

If a state appeals court has not ruled on the merits of a constitutional claim, a federal district court must conduct de novo review over the claim. *Johnson v. Williams*, 568 U.S. 289, 303 (2013). Ms. Graham thus urges de novo review, contending that the state appeals court never grappled with the constitutional aspect of her claim. We disagree.

---

[4]     In its reply brief, the State argues that Ms. Graham is challenging only the process for reinstating her judgment. But Ms. Graham challenges reinstatement of the judgment itself as arbitrary.

As noted above, Ms. Graham's constitutional claim is intertwined with a state-law claim: In the Oklahoma Court of Criminal Appeals, Ms. Graham alleged a deprivation of due process involving

- "a liberty interest protected by a clear, specific, and exclusive method under Oklahoma law for the State to seek relief from the district court's order freeing her" and

- "a substantial and legitimate expectation [that the Oklahoma Court of Criminal Appeals] will follow its own rules and laws."

Appellant's App'x vol. 1, at 80. The Oklahoma Court of Criminal Appeals rejected these allegations. But the court's opinion didn't refer to the Constitution or the right to due process. We thus consider whether the state appeals court overlooked the constitutional aspect of Ms. Graham's claim.

In answering that question, we generally presume that the state appeals court considered the constitutional claim. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). The petitioner can rebut that presumption by showing that some other explanation was more likely. *Id.* at 99–100. But the petitioner can't satisfy that burden by pointing to

- an ambiguity in the state appeals court's opinion or

- the state appeals court's failure to mention the federal basis of her claim.

*See Murphy v. Royal*, 875 F.3d 896, 925–26 (10th Cir. 2017) (ambiguity); *Fairchild v. Trammell*, 784 F.3d 702, 712 (10th Cir. 2015) (failure to mention the federal basis of the claim). To the contrary, the petitioner must rebut the presumption with evidence that "very clearly" shows the state

appeals court's failure to consider the constitutional claim. *Johnson v. Williams*, 568 U.S. 289, 303 (2013).

At most, an ambiguity existed in the state appeals court's opinion. Ms. Graham had based her constitutional claim on the finality of her relief when the State failed to appeal. Appellant's App'x vol. 1, at 80. The Oklahoma Court of Criminal Appeals rejected that claim, reasoning that Oklahoma law allowed reinstatement of the convictions even though the State hadn't appealed. *Graham v. Priddy*, No. PR-2021-1332, slip op. at 3–4 (Okla. Crim. App. Apr. 18, 2023) (unpublished).

Ms. Graham points out that this reasoning didn't refer to the Constitution or due process. But Ms. Graham premised her constitutional claim on the state court's inability to modify its earlier order (vacating the convictions) based on a subsequent change in the law. The state appeals court rejected that premise without referring to the Fourteenth Amendment's Due Process Clause. By rejecting the premise, the court presumably rejected the entirety of the constitutional claim. *See Bell v. Uribe*, 748 F.3d 857, 863–64 (9th Cir. 2014) (concluding that the petitioner didn't rebut the presumption when the state-law claim had been intertwined with a constitutional claim).

**2.    The state appeals court didn't unreasonably apply the facts or a Supreme Court holding.**

Because the state appeals court presumptively rejected the constitutional claim on the merits, the federal district court couldn't consider granting habeas relief unless the state appeals court had acted unreasonably in determining the facts or in applying a Supreme Court holding. 28 U.S.C. § 2254(d). Ms. Graham argues that the state appeals court acted unreasonably in both ways.

**a.    The state appeals court didn't unreasonably determine the facts.**

In rejecting Ms. Graham's claim, the state appeals court said that the initial order (vacating the convictions) had been "unauthorized under Oklahoma law." *Graham v. Priddy*, No. PR-2021-1332, slip op. at 4 (Okla. Crim. App. Apr. 18, 2023) (unpublished). This statement led to different interpretations of the phrase *unauthorized under Oklahoma law*. Ms. Graham has argued that this language reflects a factual mistake about the timing of the mandate in *Bosse*, and the federal district court credited this argument when declining to stay its grant of habeas relief.[5]

For this ruling, we conduct de novo review. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). For purposes of that review, Ms. Graham

---

[5]    The State did not appeal the denial of a stay. But Ms. Graham continues to argue that the state appeals court made an unreasonable determination of fact.

12

bears the burden to show that the state appeals court based its decision on an unreasonable determination of fact. *Hancock v. Trammell*, 798 F.3d 1002, 1012 (10th Cir. 2015). That burden is "'daunting'" and "will be satisfied in relatively few cases." *Byrd*, 645 F.3d at 1172 (quoting *Taylor v. Maddux*, 366 F.3d 992, 1000 (9th Cir. 2004)).

To determine whether Ms. Graham has satisfied this burden, we consider "the context and language" in the state appellate opinion. *Hancock*, 798 F.3d at 1012. The context involved a disagreement over the state court's power to modify the initial order (vacating the convictions) based on a later change in precedent. Given that context, the state appeals court's phrase (*unauthorized under Oklahoma law*) was ambiguous.

This phrase could refer to the timing of the mandate in *Bosse*. That mandate was in place when the state district court vacated Ms. Graham's convictions. The vacatur of the convictions was thus arguably valid under Oklahoma law in effect at the time. So the state appeals court's statement (that the vacatur was "unauthorized under Oklahoma law") could reflect a factual mistake about the timing of the mandate in *Bosse*.

But that's not necessarily what the state appeals court meant. The court might have been referring to its later conclusion that *Bosse* had been incorrectly decided. *See State ex rel. Matloff v. Wallace*, 497 P.3d 686, 694 (Okla. Crim. App. 2021). After all, the state appeals court ultimately concluded that the state district court could modify an order based on a

13

subsequent change in case law. *Graham v. Priddy*, No. PR-2021-1332, slip op. at 3–4 (Okla. Crim. App. Apr. 18, 2023) (unpublished). So the term *Oklahoma law* (in the phrase *unauthorized under Oklahoma law*), might have referred to the new opinion overruling *Bosse* (*Matloff*). Under this interpretation, the state appeals court made a legal determination rather than a factual mistake.

Given the ambiguity of the state appellate opinion, Ms. Graham has not satisfied her burden to establish an unreasonable determination of fact. *See Hancock v. Trammell*, 798 F.3d 1002, 1012–16 (10th Cir. 2015) (concluding that the petitioner hadn't satisfied his burden to show an unreasonable determination of fact given the ambiguity in the state appeals court's opinion).

### b.   The state appellate court didn't unreasonably apply a Supreme Court holding.

Because Ms. Graham didn't satisfy that burden, we must defer to the state appellate court unless it had unreasonably applied a Supreme Court holding. *See* 28 U.S.C. § 2254(d)(1). We gauge reasonableness based on the specificity of the Supreme Court rule. *Andrew v. White*, 62 F.4th 1299, 1311 (10th Cir. 2023). The more general the Supreme Court's rule, the greater the leeway afforded the state appeals court. *Id.* Even with a specific rule, however, we regard a state appeals court's conclusion as unreasonable

"only if 'every fairminded jurist' would 'reach a different conclusion.'" *Id.* (quoting *Brown v. Davenport*, 596 U.S. 118, 144 (2022)).

For this argument, Ms. Graham relies on *Hicks v. Oklahoma*, 447 U.S. 343 (1980). *Hicks* applied a general rule on the arbitrariness of a state court's decision. So we afford leeway to the state appeals court on how it applied this rule.

In *Hicks*, an Oklahoma trial court had imposed a mandatory minimum sentence of 40 years; and the state appeals court concluded that the trial court shouldn't have applied the mandatory minimum of 40 years. *Id.* at 345. But the state appeals court affirmed the sentence anyway, reasoning that the jury might have chosen to impose a sentence of 40 years. *Id.*

The United States Supreme Court reversed because the state appeals court had allowed the imposition of a 40-year sentence without a jury deciding that this sentence would have been appropriate. *Id.* at 346–47. The Supreme Court concluded that this outcome was arbitrary because state law "ha[d] provided for the imposition of criminal punishment in the discretion of the trial jury." *Id.* at 346. Given the state-law right for a jury to determine the sentence, the Court reasoned that the state appeals court's affirmance had arbitrarily disturbed the defendant's expectation that a jury would select the sentence. *Id.*

Here we're not addressing the arbitrary deprivation of a state-law right (like the one in *Hicks*); we're instead addressing whether the

15

Constitution prevents a state court from applying its own law to modify an order after the appeal deadline expired. Neither the Supreme Court nor our court has ever applied *Hicks* in a similar situation. *See, e.g.*, *Ross v. Oklahoma*, 487 U.S. 81, 90–91 (1988) (concluding that *Hicks* doesn't support a claim involving due process because the petitioner "received all that Oklahoma allowed him"); *Johnston v. Luebbers*, 288 F.3d 1048, 1053 n.3 (8th Cir. 2002) (concluding that *Hicks* doesn't support habeas relief because the state supreme court concluded that the ruling hadn't violated state law).

The state appeals court concluded that Oklahoma law allowed a trial court to modify an order when it had stemmed from a precedent later abrogated. *Graham v. Priddy*, No. PR-2021-1332, slip op. at 3 (Okla. Crim. App. Apr. 18, 2023) (unpublished). For this conclusion, the court relied on *In re Application of Anderson*, 803 P.2d 1160, 1162–63 (Okla. Crim. App. 1990) and *Harris v. Dist. Ct. of Okla. Cnty.*, 750 P.2d 1129, 1130–31 (Okla. Crim. App. 1988).

In both cases, an Oklahoma district court ordered release of a defendant and the State sought to vacate the release order. *Harris*, 750 P.2d at 1130–31; *In re Application of Anderson*, 803 P.2d at 1162–63. In *Harris*, the Oklahoma Court of Criminal Appeals concluded that the state district court had acted within its jurisdiction in vacating the release order. *See Harris*, 750 P.2d at 1130–31 ("If an order issued by a district court is

16

clearly erroneous under a current statute the court can modify or vacate its judgment."). In *Application of Anderson*, a state district court reduced a sentence and ordered release of the defendant. 803 P.2d at 1161–62. The State didn't appeal in time and failed to show a valid excuse for the delay. *Id.* Despite the State's failure to timely appeal, the Oklahoma Court of Criminal Appeals reinstated the original sentence, reasoning that the state district court had lacked authority to reduce the sentence. *Id.* at 1163.

The state appeals court applied these precedents here, concluding that they had allowed the state district court to modify its initial order (vacating Ms. Graham's convictions). *Graham v. Priddy*, No. PR-2021-1332, slip op. at 3–4 (Okla. Crim. App. Apr. 18, 2023) (unpublished). We generally lack authority to question the Oklahoma Court of Criminal Appeals's determination of the trial court's authority under Oklahoma law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).[6]

---

[6]    Granting habeas relief, the federal district court criticized the state appeals court for misapplying its own laws:

- "[T]he [Oklahoma Court of Criminal Appeals] arbitrarily disregarded the crushing weight of the state law and its own procedural rules governing postconviction review."

- "[S]tate law created a substantial and legitimate expectation that the [Tulsa County District Court's] final judgment granting postconviction relief would remain final absent a timely postconviction appeal by the state."

- "*Bosse I* was an authoritative decision on April 7, 2021, when the mandate issued, and the [Tulsa County District Court] could

A narrow exception exists, allowing a federal habeas court to consider whether the state court's application of state law results in a denial of due process. *See Lisenba v. California*, 314 U.S. 219, 236 (1941) (stating that California's selection of an applicable rule doesn't prevent consideration of a possible denial of due process from the application of that rule in a given case). For example, a state court's determination of state law might be arbitrary or capricious enough to create a denial of due process. *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007).

Ms. Graham claims that the state appeals court arbitrarily deprived her of the liberty interest created in the initial order (vacating the convictions). The federal district court agreed with Ms. Graham, pointing to the state district court's reliance in the initial order on precedent that had governed at the time (*Bosse*). The federal district court pointed out that the State's appeal time had expired before the state appeals court abrogated *Bosse. See State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim App. 2021).

---

rely on that decision on April 8, 2021, one day before the [Oklahoma Court of Criminal Appeals] recalled the mandate."

*Graham v. White*, No. 23-CV-0164-CVE-SH, 2023 WL 4141662, at *17 (N.D. Okla. June 22, 2023) (unpublished). But the federal district court elsewhere acknowledged that it couldn't "second-guess" the Oklahoma Court of Criminal Appeals's conclusion that state law had empowered the trial court to vacate its initial order despite the State's failure to appeal. *Id.* at *17 n.20.

The resulting constitutional issue is whether the state appeals court acted arbitrarily under Oklahoma law in allowing the state district court to modify the initial order after the State's appeal time had expired. Ms. Graham suggests that this application of state law was arbitrary. The Court of Criminal Appeals might or might not have been right in upholding the state district court's power to reinstate the convictions. But at least some fair-minded jurists could reasonably credit the state appeals court's application of *Harris* and *Application of Anderson*. So the state appeals court had leeway to reject Ms. Graham's characterization of its approach as *arbitrary*. Given that leeway, "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). So we reverse the federal district court's issuance of habeas relief.[7]

## Conclusion

The State presents two arguments for reversal of the federal district court's issuance of the writ of habeas corpus.

First, the State argues that Ms. Graham rested on state law and defects in post-conviction procedures. We disagree, concluding that Ms. Graham asserted a federal constitutional claim.

---

[7]    The State also argues that the federal district court's application of *Hicks* violated the retroactivity principles set forth in *Teague v. Lane*, 489 U.S. 288, 310 (1989). We need not address this argument because we reverse on other grounds.

19

Second, the State argues that the state appellate court acted reasonably in determining the facts and applying Supreme Court holdings. We agree and remand with instructions to deny habeas relief.