## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| **TAMIKA WHITE,** | ) | |
| | ) | |
| **Appellant/Respondent**, | ) | |
| | ) | |
| v. | ) | **Case No. 23-5069** |
| | ) | |
| **KIMBERLY GRAHAM,** | ) | |
| | ) | |
| **Appellee/Petitioner**. | ) | |

## MOTION FOR STAY AND BRIEF IN SUPPORT

Comes now the Appellant/Respondent, Tamika White, through the undersigned counsel, and moves for a stay of the district court's judgment pending the appeal in this case. Respectfully, the district court committed a number of grave errors when it granted an unconditional writ of habeas corpus based on its disagreement with the Oklahoma Court of Criminal Appeals ("OCCA") on a question of state law regarding post-conviction procedure. (Attachment 1, Opinion and Order, Dkt. 14).

Respondent sought a stay in the district court, which was denied. (Attachment 2, Motion to Stay and Brief in Support, Dkt. 17; Attachment 3, Opinion and Order, Dkt. 25).

Respondent now asks this Court to stay the judgment. Fed. R. App. P. 8; 10th Cir. R. 8.1. Petitioner objects to this request. (Attachment 4, Petitioner's Motion in Opposition to the Respondent's Motion for Stay, Dkt. 24).

## JURISDICTION

The United States District Court for the Northern District of Oklahoma, on June 22, 2023, issued an Opinion and Order, and Judgment, in Case No. 23-CV-0164-CVE-SH, granting Petitioner unconditional habeas corpus relief. (Attachment 1; Attachment 5, Judgment, Dkt. 15).  On June 23, 2023, Respondent filed a Notice of Appeal and Motion for Stay and Brief in Support (Attachment 6, Notice of Appeal, Dkt. 16; Attachment 2).  The court denied the Motion on June 30, 2023. (Attachment 3).  Respondent satisfies the requirements of Fed. R. App. P. 8(a)(1)(A) and Fed. R. App. P. 8(a)(2)(A)(ii). Respondent now seeks a stay of the judgment pending appeal pursuant to Fed. R. App. P. 8(a)(2).

## PROCEDURAL AND FACTUAL BACKGROUND

In 2009, in Tulsa County District Court Case No. CF-2007-5987, Petitioner was convicted of five counts of First Degree Manslaughter, in violation of Okla. Stat. tit. 21, § 711, and one count of Leaving the Scene of a Fatality Accident, in violation of Okla. Stat. tit. 47, § 102.1.  Petitioner was sentenced to a total of 107 years.

On direct appeal, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's convictions and sentences in an unpublished opinion in Case No. F-2009-786.

Petitioner filed an application for post-conviction relief in Tulsa County District Court ("TCDC") on November 21, 2012. That application remained pending until August 30, 2017, when Petitioner filed a supplement to the application alleging Oklahoma lacked jurisdiction over her crimes based on her status as an Indian and the location of the crimes within Indian country. On April 8, 2021, the TCDC granted post-conviction relief pursuant to *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).

On August 12, 2021, the OCCA held that *McGirt* does not apply retroactively to cases that were final on direct review when *McGirt* was decided. *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021). On August 25, 2021, the State filed in TCDC a Motion to Vacate Order Granting Post Conviction Relief, Reinstate Conviction and Sentences, and Remand to Custody based on *Matloff*. On November 18, 2021, the TDCD granted the State's motion but stayed its order to permit Petitioner to seek relief from the OCCA.

On November 19, 2021, Petitioner filed an application for writ of prohibition in OCCA Case No. PR-2021-1332 which was denied on April 18, 2023. (Attachment 7, Application for a Writ of Habeas Corpus, Dkt. 1-1 at ECF 4-58). On April 26, 2023, the Re-instated Judgment and Sentence was filed in the TCDC.

On April 25, 2023, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Oklahoma in which she

argued, *inter alia*, that the post-conviction reinstatement of her convictions violated due process per *Hicks v. Oklahoma*, 447 U.S. 343 (1980) (Attachment 7). On the same day, the Northern District ordered an "immediate" response from Respondent within 14 days.[1] (Attachment 8, Order Directing Immediate Response to Habeas Application, Dkt. 2). On May 9, 2023, Respondent filed her response. (Attachment 9, Response in Opposition to Petition for Writ of Habeas Corpus, Dkt. 8).

On June 22, 2023, the Northern District granted Petitioner an unconditional writ of habeas corpus, ordered her "immediate" release, and barred the State from retrying her. (Attachment 1). Respondent released Petitioner that day. On June 23, 2023, Respondent asked the district court to stay its order and require Petitioner's reincarceration pending appeal, which the court denied on June 30, 2023. (Attachments 2-4).

## ARGUMENT AND AUTHORITY

Petitioner brought an action under 28 U.S.C. §§ 2241 and 2254 in which she argued she was deprived of due process when the OCCA held that the TCDC had the authority under state law to reinstate her convictions.[2] Respectfully, the district

---

[1] In habeas cases arising out of state convictions, the Northern District typically gives respondents thirty days in which to respond. And orders for response typically do not issue for weeks or months.

[2] Respondent argued below that Petitioner's counseled application did not offer, and therefore waived, any argument as to how § 2241 provides a viable avenue for her claim

court committed a number of grave errors, and Respondent satisfies the requirements

for a stay of its judgment.

## I.    The District Court Erred When It Denied Respondent's Motion for Stay.

Rule 23 of the Federal Rules of Appellate Procedure provides that a decision

ordering the release of a prisoner pending appellate review may be stayed by the

justice or judge rendering the decision, by the court of appeals, or the United States

Supreme Court. *See also* 10th Cir. R. 8.1. Such a stay is also allowable under Rule

8 of the Federal Rules of Appellate Procedure.  A stay pending appeal preserves the

*status quo* until this Court has an opportunity to review the judgment.  *McClendon*

*v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996).  A stay is "an exercise

of judicial discretion," and "'[t]he propriety of its issue is dependent upon the

circumstances of the particular case.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009)

(quoting *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) (alteration in original)).

The party requesting the stay bears the burden of establishing the stay's

necessity.  *Nken*, 556 U.S. at 434.  A reviewing court considers four factors from a

moving party: "(1) the likelihood of success on appeal; (2) the threat of irreparable

harm if the stay is not granted; (3) the absence of harm to opposing parties if the stay

is granted; and (4) any risk of harm to the public interest."  *Hilton*, 481 U.S. at 776.

---

to receive habeas review.  *See Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).
The district court granted relief under § 2254.

Courts may also consider, *inter alia*, the State's interest in continuing custody pending a final determination on appeal. *Id.* at 777.

> The fact that the issuance of a stay is left to the court's discretion "does not mean that no legal standard governs that discretion . . . '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'"

*Nken*, 556 U.S. at 434 (citing *Martin v. Franklin Capital Corp*. 546 U.S. 132, 139 (2005) (quoting *United States v. Burr*, 25 F. Case. 30, 35 (No. 14, 692d) (C.C. Va. 1807) (Marshall, C.J.) (ellipses and brackets in original))).

Respondent requested a stay to preserve the *status quo*, i.e., Petitioner's incarceration, and not for purposes of unnecessary delay or prejudice to Petitioner. The district court erred when it denied that motion.

## II.     Respondent can show a likelihood of success on appeal.

Respondent respectfully contends that the district court's order granting unconditional habeas relief contains errors serious enough to warrant reversal. This first factor and the second factor (harm to Respondent) are the two most critical factors. *Nken*, 556 U.S. at 434. Respondent submits that the likelihood of success in this case is so strong as to be almost beyond question. This motion is designed to meet the standard for a stay and is not exhaustive.

### A. Petitioner's claim is not cognizable because it seeks habeas relief for alleged errors of state law.

Respondent argued below that Petitioner is foreclosed from obtaining a writ of habeas corpus based upon alleged errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (a claim that the state court misapplied its own precedent cannot be the basis for a writ of habeas corpus). The district court agreed with Respondent in principle, but stated that "whether a state's application of its own laws comport[s] with the Fourteenth Amendment's Due Process Clause is a matter of federal law, not state law." (Attachment 1 at 25-26).

The court is incorrect. The OCCA held that the trial court's ruling was in compliance with state law. (Attachment 7, Dkt. 1-1 at ECF 6-7). The district court is bound by the OCCA's interpretation of state law. *See Estelle*, 502 U.S. at 67-68; *Jeffers*, 497 U.S. at 780. That ends any possible due process inquiry under *Hicks*. *See Ross v. Oklahoma*, 487 U.S. 81, 91 (1988) (the petitioner "received all that Oklahoma law allowed him, and therefore his due process challenge fails"); *Johnston v. Luebbers*, 288 F.3d 1048, 1053 n.3 (8th Cir. 2002) (denying relief under *Hicks* where the state's highest court held the trial court's ruling did not violate state law).

Contrary to this authority, the court ultimately granted habeas relief based on its finding that

7

the OCCA arbitrarily disregarded the crushing weight of the state law and its own procedural rules governing postconviction review and capriciously rested its conclusion that the TCDC had authority to vacate the April 8, 2021, order granting postconviction relief on the demonstrably false premise that the April 8, 2021, order was "unauthorized by law."[20]

[20] This Court cannot and does not second-guess the OCCA's determination that, under Oklahoma law, a state district court "retain[s] jurisdiction to vacate or modify its previous order granting post-conviction relief" if the order granting relief "was unauthorized under Oklahoma law," even when the state has waived its statutory right to appeal. Dkt. # 1-1, at 6-7. But even accepting the majority's view that state law permits state district courts to retain jurisdiction to correct "erroneous" or "unauthorized" final judgments in postconviction proceedings absent a timely postconviction appeal, the Court finds that it was both arbitrary and fundamentally unfair arbitrary [sic] for the majority to apply that determination under the unique facts of Graham's case while the majority wholly ignored the weight of all other state law and state procedural rules that militated against permitting the state to seek reversal of a final judgment in a postconviction proceeding through a motion that does not exist under state law. See Cummings[ v. Sirmons], 506 F.3d [1211,] 1237 [(10th Cir. 2007)] ("In rare circumstances, a determination of state law can be so arbitrary and capricious as to constitute an independent due process violation.").

(Attachment 1 at 38 (first alteration by district court)).[3]

---

[3] In *Cummings*, this Court rejected the petitioner's claim that the state court had violated due process "particularly in light of the fact that the United States Supreme Court has never recognized" the right asserted by the petitioner, i.e., that accomplice testimony be corroborated. *Cummings*, 506 F.3d at 1237-38. The same is true here. (Attachment 9 at 9-

The OCCA held that, "Because the convictions in this matter were final before the July 9, 2020, decision in *McGirt [v. Oklahoma*, 140 S. Ct. 2452 (2020)], the holding in *McGirt* does not apply and the District Court's order vacating those convictions was unauthorized by law. *See [State ex rel.] Matloff [v. Wallace]*, 2021 OK CR 21, ¶ 40, 497 P.3d [686,] 694." (Attachment 7, Dkt. 1-1 at ECF 6, at ECF 7 ("Because dismissal of Petitioner's judgment and sentence was unauthorized under Oklahoma law . . . ." (emphasis added)), at ECF 7 ("Petitioner fails to show the District Court's reinstatement of her convictions constituted an exercise of judicial power that is unauthorized by law . . . ."), at ECF 6-7 (a state district court may correct its errors "even when the unauthorized dismissal occurs in the context of an order granting post-conviction relief which is not timely appealed by the State. *See [Application of] Anderson*, 1990 OK CR 82, ¶¶ 3, 5, 803 P.2d [1160,] 1162)).

---

12). The dicta in *Cummings* regarding the possibility that a state law determination may violate due process originates from similar dicta in the Supreme Court's decision in *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). *Id*. at 1237. Importantly, the statement in *Lewis* **did not** indicate that a state court's **determination of what state law is** might violate due process. Rather, the position of the petitioner was that the state court "simply misapplied its own aggravating circumstance to the facts of [the petitioner's] case." *Lewis*, 497 U.S. at 780. And the Supreme Court rejected that claim because "respect for a state court's findings of fact and application of its own law counsels against the sort of *de novo* review undertaken by" the state court, and instead requires only that there was sufficient evidence from which a reasonable factfinder, viewing the evidence in the light most favorable to the state, could have found the aggravating circumstance proven. *Id*. at 780-81. Neither *Cummings* nor *Lewis* involved a federal court second-guessing a state court's determination of the meaning of state law, or what state law requires.

The district court was prohibited from concluding that the TCDC's vacation of Petitioner's convictions was not unauthorized by law. *See Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Because the district court's conclusion that *Hicks* was violated rested on this error, its judgment cannot stand.

### B. Petitioner's claim is not cognizable because she is not challenging her judgment and sentence, but rather the state courts' rulings on post-conviction matters.

Respondent argued below that Petitioner's claim was not cognizable because it attacks state post-conviction proceedings and not the constitutionality of her original judgment and sentence. *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("The first hurdle Petitioner must overcome is that his principal constitutional argument does not revolve about trial error but about matters that occurred subsequently. . . . Moreover, because the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993); *Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986).

The district court agreed with Respondent in principle, but nonetheless held that Respondent's cases were inapplicable under "the unique facts" of Petitioner's case:

Graham alleges that the state violated her right to due process by depriving her of a liberty interest—her freedom—without due process because the TCDC applied existing law to grant her application for postconviction relief and discharge her from state custody, as authorized by state law, and the state courts subsequently disregarded, or arbitrarily applied, state law by permitting the state to effectively obtain a reversal of the lawful and final grant of postconviction relief when the state did not perfect a postconviction appeal and when the state's request to "vacate" the lawful, final postconviction judgment, "re-convict[]" her, and recommit her to state prison four months after her release from state custody was based on the newly-announced Wallace rule. Dkt. # 1, at 7, 11-19. Even assuming the Fourteenth Amendment violation Graham alleges here could be construed as arising from a state postconviction proceeding,[15] Graham's present confinement under the reinstated judgment and sentence that was entered against her in April 2023 is the direct result of the alleged due process violation. Because Graham's present detention in state custody resulted from the claimed violation of her Fourteenth Amendment right to due process, her claim "is just as close to the court of habeas corpus as an attack on [her] conviction[s], for it goes directly to the constitutionality of [her] physical confinement itself and seeks . . . immediate release from that confinement." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973) [additional citations omitted].

[15] This is a generous assumption. As previously discussed, the TCDC, Graham's counsel, and at least one OCCA judge agreed that the proceedings related to the state's motion to vacate the TCDC's final judgment could not be properly characterized as proceedings under the Oklahoma Post-Conviction Procedure Act. [Citations omitted].

(Attachment 1 at 29-30 (alterations added)).

Respectfully, the fact that a federal court may not review a court's "post-conviction" proceedings is not dependent on what those proceedings are called, or whether the State's motion to vacate was proper under Oklahoma's Post-Conviction Procedure Act. *See Sellers*, 135 F.3d at 1339 ("The first hurdle Petitioner must overcome is that his principle constitutional argument does not revolve about trial error but about matters that occurred subsequently."). Nor does the fact that Petitioner would not be confined if not for these "post-conviction" proceedings authorize habeas relief. *See Sellers*, 135 F.3d at 1339 ("Thus, although Petitioner has presented substantial credible evidence that now and at the time of his trial he suffers from a mental illness that may have bearing upon his factual innocence of the crimes for which he stands convicted, he does not cross the threshold barrier to federal habeas corpus" because he challenged "the State's post-conviction remedy.") (emphasis added).

Finally, *Preiser* does not support Petitioner's requested relief. *Preiser* involved a Civil Rights Act lawsuit by state prisoners who believed they were unjustly deprived of good-conduct-time credits. *Preiser*, 411 U.S. at 476. This Court has held, in the post-conviction context, that when a habeas petitioner "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim". *Sellers*, 135 F.3d at 1339. *Sellers*, and not *Preiser*, is binding in this case.

**C. The district court erred in *sua sponte* disregarding 28 U.S.C. § 2254(d).**

In his habeas petition, Petitioner did not argue that the OCCA's decision was not entitled to deference under 28 U.S.C. § 2254(d). (Attachment 7; Attachment 9 at 9 & n.7 (noting Petitioner alleged the OCCA's decision violated § 2254(d)(2), arguing this Court should hold that Petitioner had waived any challenge under § 2254(d)(1), and noting that Petitioner did not allege the OCCA failed to address his *Hicks* claim on the merits)). Nonetheless, the district court held that, because the OCCA did not "acknowledge[], much less evaluate[], the substance of Graham's Fourteenth Amendment claim," § 2254(d) did not apply. (Attachment 1 at 33 (alterations by the court)).

In the order denying the stay, the district court held that it was required to determine the applicability of § 2254(d), citing *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009). (Attachment 3 at 6). The court has it backwards. State courts are *presumed* to have denied claims on the merits. *Johnson v. Williams*, 568 U.S. 289, 301-02 (2013). *Gardner* furthers that presumption by holding that parties may not waive the deference afforded to state courts. *Gardner*, 568 F.3d at 878-79. Instead of abiding by this principle of deference, the court relied upon the dissent in *(Donald) Grant v. Royal*, 886 F.3d 874 (10th Cir. 2018), ignoring that the majority held that *Gardner* cannot be read to permit courts to "strip *sua sponte* state court decisions of AEDPA[]". *(Donald) Grant*, 886 F.3d at 931 n.20. The court erred.

*See Andrew v. White*, 62 F.4th 1299, 1341 (10th Cir. 2023); *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("we do not believe it is the proper function of the district court to assume the role of advocate") (emphasis added).

Further, even assuming a court can *sua sponte* disregard § 2254(d), the district court erred in doing so here. *See Johnson*, 568 U.S. at 298 (state courts are presumed to decide the merits of all federal claims before them even if they discuss some claims but not others); *id*. at 306 ("The possibility that the [state court] had simply overlooked Williams' Sixth Amendment claim apparently did not occur to anyone until that issue was raised by two judges during the oral argument in the Ninth Circuit. . . . Williams presumably knows her case better than anyone else, and the fact that she does not appear to have thought that there was an oversight makes such a mistake most improbable.").

In *Johnson*, the petitioner challenged the dismissal of a juror on both state and federal grounds without "clearly distinguish[ing] between these two lines of authority." *Id*. at 295. The state court "did not expressly acknowledge that Williams had invoked a federal basis for her argument." *Id*. at 296. The Ninth Circuit Court of Appeals found it "'obvious'" that the state court "'overlooked or disregarded'" the federal claim. *Id*. at 297. The Supreme Court reversed, establishing a strong presumption that "that may be rebutted only in unusual circumstances" when "the

evidence leads very clearly to the conclusion" that the state court did not adjudicate the claim. *Id*. at 302.

The presumption is not rebutted here. As in *Johnson*, the OCCA did not mention the federal claim. Yet, that alone is not sufficient. Petitioner's petition for writ of prohibition claimed the OCCA violated state law, and therefore violated *Hicks*. (Attachment 7, Dkt. 1-1 at 53). The Supreme Court held that the presumption applies to such circumstances: "there are circumstances in which a line of state precedent is viewed as fully incorporating a related federal constitutional right. . . . In this situation, a state appellate court may regard its discussion of the state precedent as sufficient to cover a claim based on the related federal right." *Johnson*, 568 U.S. at 298-99.

Petitioner's due process claim depends entirely on whether she received all she was due under state law. Accordingly, the *Richter*/*Johnson* presumption has not been rebutted. *Cf. Johnson*, 568 U.S. at 306 ("Williams treated her state and federal claims as interchangeable, and it is hardly surprising that the state courts did so as well").

Finally, the court added, for the first time in its order denying the stay, that the OCCA violated § 2254(d)(2) when it found the TCDC's order granting post-conviction relief "unauthorized by law." (Attachment 3 at 8 n.2). As explained

above, this is a holding of law, not of fact, and it is a question of state law that is not reviewable by federal courts.

**D. The district court's *de novo* review was incorrect and *Teague*-barred.[4]**

Finally, the district court's application of *Hicks* was incorrect for at least two reasons. *First*, as explained in subsection A, that court was bound by the OCCA's determination that the TCDC's order granting post-conviction relief was unauthorized by law. As Petitioner received all that she was entitled to under state law, *Hicks* was not violated.

*Second*, even on *de novo* review, federal courts are bound by the *Teague* anti-retroactivity rule.[5] *Smith v. Sharp*, 935 F.3d 1064, 1083-84 (10th Cir. 2019). The *Teague* anti-retroactivity rule applies not just to newly announced rules, but also where a "prior decision is applied in a novel setting, thereby extending the precedent." *Stringer v. Black*, 503 U.S. 222, 228 (1992). That is *Teague* is violated when an old rule is applied "in a manner that was not dictated by precedent." *Id.* The phrase "dictated by precedent," in turn, requires that a case's

---

[4] *Teague v. Lane*, 489 U.S. 288 (1989).

[5] Respondent made this argument at the first available opportunity, in her motion to stay before the district court, as Petitioner did not argue in her petition that § 2254(d) did not apply. Respondent thus limited her response to whether *Hicks* provides clearly established federal law in this context. Respondent reasserts and preserves all previous arguments in that respect.

result be "apparent to all reasonable jurists." *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997).

Here, after *sua sponte* finding a lack of merits adjudication and stripping the OCCA of § 2254(d) deference, the district court did not acknowledge *Teague*. (Attachment 1 at 32-41). Yet, the court clearly applied *Hicks* to a novel setting in a manner not dictated by precedent. The court repeatedly stressed the "unique facts" of Petitioner's case thus eliminating any doubt as to whether this case involved a "novel setting" for application of *Hicks*. (Attachment 1 at 26, 28, 31 n. 16, 35, 38 n. 20). The court announced its holding, *i.e.*, "that the state courts deprived Graham of an unconditional liberty interest—namely, her freedom from state custody—by applying state law in a way that was both fundamentally unfair and arbitrary in the constitutional sense," with a "see" citation to a circuit court case and a "cf." cite to a Supreme Court case. (Attachment 1 at 35). *See Lambrix*, 520 U.S. at 528-29 (result not dictated by precedent where Supreme Court opinion offered only a single citation, preceded by "cf." in support of its central conclusion); *Soffar v. Cockrell*, 300 F.3d 588, 598 (5th Cir. 2002) (en banc) (only Supreme Court cases, and not circuit court cases, can be considered). In other words, the district court's application of *Hicks* to Petitioner's case would not have been apparent to all reasonable jurists at the time Petitioner's convictions became final (or even when the OCCA denied her petition for a writ of prohibition).

Furthermore, the new rule announced by the district court was procedural, meaning Petitioner should not have received its retroactive benefit. *See Edwards v. Vannoy*, 141 S. Ct. 1547, 1562 (2021). Specifically, the district court did not dispute that Petitioner could have properly remained incarcerated had the TCDC initially denied her post-conviction relief or had the State pursued a timely post-conviction appeal. Rather, this Court concluded that the "unique procedural facts" of the case resulted in constitutional error—specifically, that "the state courts' failure to follow state law and state procedural rules, under the unique facts of her case, deprived her of a liberty interest protected by the Fourteenth Amendment." (Attachment 1 at 26, 31 n.16). In effect, the court extended *Hicks* to announce a new procedural rule, one that should not have been retroactively applied to Petitioner under *Teague* and *Edwards*.

Rejecting this argument in denying Respondent's motion to stay, the district court further erred. The district court claimed it had merely applied a general rule to the particular facts of Petitioner's case, such that it did not announce a new rule. (Attachment 3 at 9-10). But the district court made no mention of the "reasonable jurists" standard, let alone find that the court's extension of *Hicks* was apparent to all reasonable jurists. *Lambrix*, 520 U.S. at 527-28. As shown above, it clearly was not.

**III.     The State will suffer irreparable injury if the stay is not granted, and granting the stay will serve the public interest and not substantially prejudice Petitioner.**

Respondent further satisfies the other factors to be considered in deciding this motion. In the context of deciding whether a habeas petitioner should be released or remain incarcerated pending the State's appeal of the grant of habeas relief, the Supreme Court has said that, "[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777. However, the Court "agreed that the possibility of flight should be taken into consideration"; "that, if the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration"; and that "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered." *Id*. This final factor "will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.*

Here, irreparable injury will result if Petitioner is not reincarcerated. Specifically applying the *Hilton* factors, as to flight risk, Petitioner has been released without any sort of bond.[6] As to the danger to the public, Petitioner

---

[6] Respondent understands that Petitioner is subject to criminal charges filed by the Muscogee Nation, and that she was released on bond therefrom. However, Respondent does not know the terms and conditions of that bond. In particular, as relevant to danger

previously drove while intoxicated and killed *five* individuals; her guilt is not in dispute. Furthermore, recidivism among DUI offenders is well-established. DeMichele, et al, *DWI Recidivism: Risk Implications for Community Supervision*, Federal Probation: A Journal of Correctional Philosophy and Practice, Vol. 75:3.[7] Again, that Petitioner reportedly has not yet reoffended (Attachment 3 at 13) does not guarantee she will not.

Finally, "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case" is "strongest" where, as here, "the remaining portion of the sentence to be served is long." *Hilton*, 481 U.S. at 777. Petitioner has, at a minimum, more than ninety years left to serve of her total 107-year sentence.

As to any injury to Petitioner from a stay, in general, "a successful habeas petitioner is in a considerably less favorable position than a pretrial arrestee. . . . Unlike a pretrial arrestee, a state habeas petitioner has been tried, convicted, and unsuccessfully appealed. *Id.* at 779. Petitioner here is even less favorably situated as the district court found constitutional infirmity in her post-conviction

---

to the public, Respondent does not know whether Petitioner's bond with the Nation prohibits her from using intoxicating substances. Further, that Petitioner has previously voluntarily surrendered (Attachment 3 at 12-13) is no guarantee that she will do so if her final chance for release, a writ of habeas corpus, is denied.

[7] Available at https://www.uscourts.gov/sites/default/files/75_3_3_0.pdf.

proceedings, *not* as to her conviction and sentence or trial.[8] At bottom, given the robust showing by Respondent of a strong likelihood of success on the merits, as well as Respondent's demonstration that the second and fourth factors weigh in favor of a stay, a stay is warranted notwithstanding any potential injury to Petitioner. *See id.* at 777-78

## CONCLUSION

Respondent has demonstrated that there are "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (internal quotations omitted).  As the other stay factors also tip in favor of Respondent, Respondent prays that her Motion for Stay be granted.

---

[8] The court's order denying a stay holds, for the first time, that Petitioner's convictions were obtained in violation of the constitution. (Attachment 3 at 12).  This question was not before the court.

Respectfully submitted,

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

s/ **JENNIFER L. CRABB**
**JENNIFER L. CRABB, OBA # 20546**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
(405) 521-3921    FAX (405) 522-4534
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR RESPONDENT**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPEFACE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,173 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

**s/ JENNIFER L. CRABB**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the on the 30th day of June, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System and also transmitted a Notice of Electronic Filing to the following ECF registrant(s):

Richard O'Carroll
troc@cox.net
Counsel for Petitioner

**<u>s/ JENNIFER L. CRABB</u>**